JOHN H. DONBOLI (SBN: 205218)
E-mail: jdonboli@delmarlawgroup.com
JL SEAN SLATTERY (SBN: 210965)
E-mail: sslattery@delmarlawgroup.com
**DEL MAR LAW GROUP, LLP**
12250 El Camino Real, Suite 120
San Diego, CA 92130
Telephone: (858) 793-6244
Facsimile:  (858) 793-6005

Attorneys for Plaintiff: LOUISE CLARK

SHANNON L. HOPKINS (Admitted *Pro Hac Vice*)
Email: shopkins@zlk.com
NANCY A. KULESA (Admitted *Pro Hac Vice*)
Email: nkulesa@zlk.com
**LEVI & KORSINSKY, LLP**
733 Summer Street, Suite 304
Stamford, CT 06901
Telephone: 212-363-7500
Facsimile: 866-367-6510

Attorneys for Plaintiff: ROBYN MARNELL

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOUISE CLARK, an individual and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>vs.<br><br>CITIZENS OF HUMANITY, LLC, a Delaware Limited Liability Company; MACY'S, INC., a Delaware Corporation; and DOES 1 through 100, inclusive,<br><br>     Defendants. | CASE NO. 14-CV-1404 JLS WVG<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date: January 22, 2015<br>Time: 1:30pm<br>Ctrm: 4A<br>Judge: Hon. Janis L. Sammartino |

# **TABLE OF CONTENTS**

I.    INTRODUCTION.................................................................1

II.   STATEMENT OF FACTS.......................................................5

III.  THE LEGAL STANDARDS.....................................................6

    A.    The Motion to Dismiss under Federal Rule of Civil Procedure
        12(b)(6)..................................................................6

    B.    Federal Preemption.....................................................7

IV.   THERE IS NO CONFLICT PREEMPTION BECAUSE DEFENDANT
    MAY COMPLY WITH BOTH THE CALIFORNIA STATUTE AND THE
    FEDERAL STATUTES. ........................................................7

    A.    California's "Made in USA" Statute Is Not Preempted by the FTC's
        "Made in USA" Standard................................................8

    B.    California Law is Consistent with the Federal Regulations
        Promulgated Under the Textile Fiber Products Identifications Act...10

V.    THERE IS NO EVIDENCE SHOWING CALIFORNIA'S "MADE IN
    USA" STATUTE IS INCONSISTENT WITH CONGRESSIONAL
    OBJECTIVES...............................................................13

VI.   CALIFORNIA'S "MADE IN USA" STATUTE DOES NOT VIOLATE
    THE DORMANT COMMERCE CLAUSE............................ ...18

VII.  CONCLUSION...............................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alaska Airlines, Inc. v. Long Beach*

      951 F.2d 977, 983 (9th Cir. 1992)..................................................... 19

*Arizona v. United States*,

      132 S.Ct. 2492, 2501 (2012)............................................................7

Arpin v. Santa Clara Valley Transp. Agency

      261 F.3d. 912, 925 (9th Cir. 2001)...................................................20

*Ashcroft v. Iqbal*,

      556 U.S. 662, 678 (2009)..................................................................6

*Bell Atlantic Corp. v. Twombly*,

      550 U.S. 544, 570 (2007)..................................................................6

*Brown-Forman Distillers Corp. v. N.Y. State Liquor Authority*

      476 U.S. 573,579 (1986)................................................................ 19

*Crosby v. National Foreign Trade Council*,

      530 U.S. 363, 373 (2000)................................................................13

*Deaf v. Netflix, Inc.*

      869 F.Supp.2d 196 (D. Mass. 2012)..................................................9

*Dilts v. Penske Logistics, Inc.*,

      2014 U.S. App. LEXIS 12933, *12 (9th Cir. July 9, 2014)................14

*Enforcement Policy Statement on United States Claims*

      62 Fed. Reg. 63756, 63768 (Dec. 2, 1997).......................................8

*Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*

      458 U.S. 141 (1982)......................................................................18

# TABLE OF AUTHORITIES

## (cont'd)

**Page(s)**

*Florida Lime & Avocado Growers, Inc. v. Paul,*

    373 U.S. 132, 145 (1963)...................................................9

*Franklin Nat. Bank of Franklin Square v. New York*

    347 U.S. 373 (1954) ....................................................17

*Gadda v. Ashcroft,*

    377 F.3d 934, 944 (9th Cir. 2004).....................................7

*Gilstrap v. United Air Lines, Inc.,*

    709 F.3d 995, 1008 (9th Cir. 2013)...................................7

Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc.

    742 F. 3d 414 (9th Cir. 2014)...........................................9

In re Bare Escentuals, Inc.

    745 F. Supp.2d 1052........................................................ 1

*Jimeno v. Mobil Oil Corp.,*

    66 F.3d 1514, 1526 n. 6 (9th Cir. 1995)............................7

*McDaniel v. Wells Fargo Investments, LLC,*

    717 F.3d 668, 674 (9th Cir. 2013).............................13,18

*Morales v. Trans World Airlines, Inc.,*

    504 U.S. 374, 383–84 (1992)..........................................14

*Motus v. Pfizer Inc.,*

    127 F. Supp. 2d 1085, 1092 (C.D. Cal. 2000)...................7

*Navajo Freight Lines, Inc.*

    359 U.S. 520 (1959).......................................................22

-iii-

## <u>TABLE OF AUTHORITIES</u>

### (cont'd)

<u>Page(s)</u>

*Northwest Environmental Defense Center v. Owens Corning Corp.*,

    434 F.Supp.2d 957, 973-974 (D. Or. 2006)……………………….……...9,16

*Pacific Legal Foundation v. State Energy Res. Conservation & Dev. Com.*,

    659 F.2d 903, 919 (9th Cir. 1981)……………...……….......……...…8

*Recinto v. United States Dep't of Veterans Affairs*,

    706 F.3d 1171, 1177 (9th Cir. 2013.………………………….…………7

*Rice v. Norman Williams Co.*,

    458 U.S. 654, 659 (1982)…………………………………….…………8

*Rowland v. Paris Las Vegas*

    2014 U.S. Dist. LEXIS 108565 ……………………………….………1

*S.D. Myers, Inc. v. City & County of San Francisco*

    253 F.3d 461,469 (9th Cir. 2001)……………………………… .21.24

*Southern Pacific Co. v. State of Arizona ex rel. Sullivan*

    325 U.S. 761 (1945)……………………………………….… 22,23

*State v. Heckel*

    24 P.3d 404,411 (2001)……………………………………….…21

*Teltech Sys., Inc. v. Bryant*

    702 F.3d 232 (5th Cir.2012)…………………………….……......17

*Ting v. AT&T*,

    319 F.3d 1126, 1137 (9th Cir. 2003)…………………………...13

*United States v. Arizona*,

    641 F.3d 339, 345 (9th Cir. 2011)…………………….……...7

1

## **TABLE OF AUTHORITIES**

2

### **(cont'd)**

3

**Page(s)**

4

*Valley Bank of Nevada v. Plus System, Inc.*

5

914 F.2d 1186, 1194 (9th Cir. 1990)……………………………………..19

6

*Wyeth* v. *Levine,*

7

555 U.S. 555 (2008) …………………….....…….........….……...…..….……4

8

9

**California Cases**

10

*Benson v. Kwikset Corp.,*

11

12

152 Cal.App.4th 1254, 1273 (2007)……………………………….......8

13

*Colgan v. Leatherman Tool Group, Inc.,*

14

135 Cal.App.4th 663, 684 (2006)...……………………………......8,14,15

15

*Copley Press, Inc. v. Superior Court*

16

39 Cal.4th 1272.1302 (2006)…………………………………………..19

17

*Farm Raised Salmon Cases,*

18

42 Cal.4th 1077, 1088 (2008)………………………...……....7

19

*Ferguson Friendfinders, Inc.*

20

94 Cal.App.4th 1255 (2002)………………………………5,21

21

*Keimer v. Buena Vista Books,*

22

75 Cal.App.4th 1220, 1230 (1999)…..……………………………7,21

23

*Kwikset Corp. v. Superior Court,*

24

51 Cal.4th 310, 328 (2011)……………………………………2,15,20

25

*Lockyer v. City of San Francisco*

26

33 Cal.4th 1055,1086 (2004)……………………………………….19

27

28

1

## TABLE OF AUTHORITIES

2

### (cont'd)

3

**Page(s)**

4

*Paz v. AG Adriano Goldschmeid, Inc.*

5

2014 U.S. Dist. LEXIS 156413..............................3,4,9,10,12,13,14,16

6

*People v. Conklin,*

7

12 Cal.3d 259, 270-271 (1974)................…..……....….....…....9,16

8

*Viva! International Voice for Animals v. Adidas Promotional Retail Operations,*
9
*Inc.,*

10

41 Cal.4th 929, 936 (2007)...............................…..…......…...….…......8

11

12

**Federal Statutes**

13

15 USC

14

§ 45a.............................................…............….…......3,6

15

§70, ...........................................................…..….......6

16

16 C.F.R.

17

§ 303.33, subd. (a)(2) ...........................................….…......11

18

§ 303.33, subd. (a)(3) ...........................................….….......11

19

§303.33, subd. (a)(4)(i).........................................….….......12

20

**California Statutes**

21

Business & Professions Code

22

§ 17200.......................................................…....….....6

23

§ 17500.......................................................…............13

24

§ 17533.7.....................................................…..….....1,2,6,8,16

25

Civil Code

26

§1750.........................................................…...… .6,13

27

28

## TABLE OF AUTHORITIES

### (cont'd)

Page(s)

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6)……………………….……….………….6

Federal Trade Commission, *Enforcement Policy Statement on United States Origin Claims*, 62 Fed. Reg. 63756, 63768 (Dec. 2, 1997)………………..……...8,14

Plaintiffs Louise Clark ("Plaintiff Clark") and Robyn Marnell ("Plaintiff Marnell" collectively, with Plaintiff Clark, "Plaintiffs") submit this Memorandum of Points and Authorities in Opposition to the Motion to Dismiss First Amended Complaint filed by Defendants Citizens of Humanity, LLC ("Citizens") and Macy's, Inc. ("Macy's") on December 9, 2014.

## I.   INTRODUCTION.

Citizens and Macy's (collectively "Defendants") Motion to Dismiss First Amended Complaint (the "Motion") asks this Court to boldly go where no other court in California has ever gone in the 54 years[1] since the California "Made in USA" statute was enacted.  Specifically, Defendants ask this Court to find that the California "Made in USA" statute is preempted by federal law and violates the Dormant Commerce Clause.[2]

As an initial matter, not only did California enact a statute to protect the "Made in USA" label in California in the form of Business & Professions Code § 17533.7,[3] but the California Supreme Court recently confirmed the importance of the California "Made in USA" standard in one of its most important consumer protection decisions in recent years by stating that:

---

[1]   Business & Professions Code § 17553.7 was enacted in 1961.

[2]   Defendants filed a request for judicial notice along with the filing of this Motion.  The FTC documents cited therein may be judicially noticed for their existence but not for the truth of the matter asserted therein. *See Rowland v. Paris Las Vegas*, No. 3:13-cv-02630-GPC-DHB, 2014 U.S. Dist. LEXIS 108565, at *11 (S.D. Cal. Aug. 6, 2014) (taking judicial notice of certain documents but not for the truth of the matters asserted therein); *In re Bare Escentuals, Inc. Sec. Litig.*, 745 F.Supp.2d 1052, 1067 (N.D. Cal. 2010) ["the court may take judicial notice of the existence of unrelated court documents, although it will not take judicial notice of such documents for the truth of the matter asserted therein."].

[3]   Business & Professions Code § 17553.7 makes it unlawful to label any merchandise with the statement "Made in the U.S.A" "when the merchandise or any article, unit, or part thereof, has been entirely or substantially made, manufactured, or produced outside of the United States."

1

**Simply stated: labels matter**. The marketing industry is based on the premise that labels matter, that consumers will choose one product over another similar product based on its label and various tangible and intangible qualities they may come to associate with a particular source. . . . In particular, **to some consumers**, the "Made in U.S.A." label matters. A range of motivations may fuel this preference, from the desire to support domestic jobs, to beliefs about quality, to concerns about overseas environmental or labor conditions, to simple patriotism. The Legislature has recognized the materiality of this representation by specifically outlawing deceptive and fraudulent "Made in America" representations. (§17533.7; see also Civ.Code, §1770, subd. (a)(4) [prohibiting deceptive representations of geographic origin].) The object of section 17533.7 "is to protect consumers from being misled when they purchase products in the belief that they are advancing the interests of the United States and its industries and workers...."

*Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 328 (2011).

In this case, Defendants manufactured and sold jeans in California that were labeled as "Made in the U.S.A." FAC ¶¶ 1, 3, 18, 20, 23-26, 29, 31.[4] Plaintiffs bring this class action on behalf of all purchasers of "Made in the U.S.A." or "Made in the USA" labeled apparel products manufactured, distributed, marketed, and/or sold by defendant Citizens of Humanity, LLC in California. Plaintiffs also assert a subclass of consumers who purchased any of Citizens' jean products online (the "Online Purchaser Subclass") as well as a subclass that extends to consumers who purchased any of Citizens' jean products that were labeled as "Made in USA with imported fabric" (the "Imported Fabric Subclass"). FAC ¶¶ 32-33.[5] Regardless of which country of origin label was set forth on the jeans, the

---

[4]    "FAC" refers to the First Amended Complaint filed on November 20, 2014.

[5]    Defendants' incorrectly state that the jeans purchased by Plaintiffs were labeled "MADE IN U.S.A. OF IMPORTED FABRIC." Mot. at 3 n.2. While this action includes an Imported Fabric Subclass, which did in fact see such a label, Plaintiffs' jeans bore the label "Made in the U.S.A." FAC ¶¶ 23-24, 31-33.

jeans contained multiple component parts manufactured outside of the United States in violation of California law.  FAC ¶ 3, 4, 19, 23, 24, 48, 54, 55, 68. Plaintiffs each purchased a pair of these jeans and discovered (after their purchase) that the jeans were comprised of foreign manufactured component parts, which rendered the "Made in the USA" representation false under California law.

Defendants now move to dismiss the First Amended Complaint based on federal preemption and the Dormant Commerce Clause. Defendants' Motion is largely premised on the fact that there are federal statutes and regulations governing the "Made in U.S.A." label and that these laws allegedly preempt California's "Made in USA" statute because of the differences between the two standards.  Defendants also allege that California's statute violates the Dormant Commerce because it imposes stricter labeling requirements than the federal statutes and would create a significant burden on interstate commerce.  The Motion, however, suffers from fundamental flaws in its arguments.

First, this Court (by way of the Hon. Dana Sabraw) recently held that the California's "Made in U.S.A." statute is **not** preempted by federal law.  *Paz v. AG Adriano Goldschmeid, Inc.,* No. 14cv1372 DMS (DHB), 2014 U.S. Dist. LEXIS 156413 (S.D. Cal. Oct. 27, 2014); *Id.* at *7-8 [The Court agrees that with these types of products California law prohibits the use of a "Made in U.S.A." label whereas federal law does not.  However, the Court disagrees that this results in conflict preemption."].  Nearly identical to the facts in this case, the plaintiff in *Paz* alleged that the "Made in U.S.A." label on defendants' jeans violated California state law and the defendants moved to dismiss the complaint on federal preemption grounds. *Id.* at *2-3. The Court in *Paz* held that the plaintiff's state claims were not preempted by federal law. *Id.* at *16.  This is enough, standing alone, to end the preemption inquiry.

Second, the principle federal law cited by Defendants (15 USC § 45a or

"Section 45a") explicitly states that "[n]othing in this section shall preclude the application of other provisions of law relating to labeling."  This language establishes that Congress did not intend to "occupy the field" in this area of the law (this language should also serve to end the preemption inquiry). *See Wyeth* v. *Levine,* 555 U.S. 555 (2008) (finding that Congressional intent was the key to the preemption analysis).  The Court, in *Paz,* already found that "there is nothing in [15 U.S.C. § 45a] that indicates Congress intended to preempt the field of 'Made in U.S.A.' labels." *Paz*, 2014 U.S. Dist. LEXIS 156413, at *12.

Third, as this Court is well aware, there is no absolute prohibition against the federal government and state governments legislating the same conduct. State law will only be preempted under *limited* circumstances.  One of these instances occurs when federal and state laws conflict to the extent that full compliance with both laws is "impossible" or where the state law is an obstacle to the federal law.  As the Court in *Paz* already recognized, however, "it would not be impossible for Defendants to comply with both ['Made in U.S.A.'] laws" nor would "compliance with one [ ] be an obstacle to the other." *Paz,* 2014 U.S. Dist. LEXIS 156413, at *8-9 & nn.1-3. The fact that California opted to enact a stricter standard does not mean the state statute will necessarily conflict with the federal statute.  In fact, common sense dictates that Defendants could have easily complied with <u>both</u> federal and California labeling laws by either manufacturing the jeans in the United States with 100% U.S.-made component parts or simply labeling the jeans with a *truthful* qualified statement such as "Made in the U.S.A. with foreign made fabric, buttons, zippers, and thread."

Fourth, the federal laws championed by Defendants have no private right of action. Undoubtedly Defendants and other apparel manufacturers would rejoice if this Court granted the Motion because without a private right of action, there would be little that California consumers could do to enforce any "Made in USA"

4

standard against unscrupulous manufacturers.  Defendants are willing to accept money from California consumers but apparently unwilling to comply with California's labeling laws while doing so.

Lastly, California Courts have recognized that California has a substantial, legitimate interest in protecting its citizens from receiving deceptive unsolicited materials and that state statutes eliminating fraud and deception actually facilitate interstate commerce rather than impede it. *See Ferguson v. Friendfinders, Inc.,* 94 Cal.App.4th 1255 (2002).  Although California enacted a stricter statute than federal law, compliance with the California statute does not violate or preclude the Defendants' from selling its products in other states, nor does it conflict with the enforcement of other state laws.  In fact, the stricter California provision promotes other state laws by ensuring that truthful disclosures are made to consumers.  Thus, as fully detailed herein, there is no federal preemption or violation of the Dormant Commerce Clause and this Court is wholly proper in denying the Motion.

## II.  STATEMENT OF FACTS.

Citizens designs and markets denim jeans in the United States.  FAC ¶ 8.  One of its lines of jeans is the "BOYFRIEND" brand.  *Id.*  Its products are distributed in 35 countries through 1,300 retailers, including Macy's.  *Id.*

Plaintiff Clark entered a Macy's store in San Diego County on May 31, 2014 and purchased a pair of Citizen's BOYFRIEND brand jeans.  FAC ¶ 23.  Plaintiff Marnell went online at Shopbop.com in April 2014 and purchased a pair of Citizens' BOYFRIEND brand jeans. FAC ¶ 24.  At the time of each Plaintiff's purchase, the jeans were prominently labeled as "Made in the U.S.A." FAC ¶¶ 23-24. In truth, Citizens' jeans "are substantially and/or partially made, manufactured, or produced with <u>component parts</u> that are manufactured *outside of the United States.*" FAC ¶ 19 [Emphasis in original].  These jeans consist of fabric, thread, buttons, and/or rivets which are manufactured outside the United States.  *Id.*

Citizens also uses foreign manufactured components in other models of jeans. *Id*.

This lawsuit was filed by Plaintiff Clark on June 9, 2014.  Docket No. 1.  On November 20, 2014, a First Amended Complaint was filed adding Plaintiff Marnell. Docket No. 18.  The First Amended Complaint alleges Defendants' actions of manufacturing and selling the jeans with an unqualified "Made in the USA" label is a violation of Business and Professions Code section 17533.7.  FAC ¶ 68.  The false label also violates Civil Code section 1750 *et seq*. and Business and Professions Code section 17200 *et seq*.  FAC ¶¶ 47-51 and 54-58.  Plaintiffs bring this lawsuit on behalf of themselves and all other similarly situated who purchased Citizens' falsely labeled jeans in California. FAC ¶ 30-41.

Defendants elected to file this Motion predicated primarily on federal preemption.  Specifically, Defendants argue that the California "Made in USA" statute is preempted by two federal statutory schemes:  (a) the Federal Trade Commission Act ("FTC") (15 U.S.C. section 45a) and its regulations; and (b) the Textile Fiber Products Identification Act (15 U.S.C. section 70) and its regulations. Defendants further argue that the California statute is unconstitutional under the Dormant Commerce Clause.  Plaintiffs now oppose the Motion.

## III.    THE LEGAL STANDARDS.

### A.    The Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, at 678. "Well-pleaded factual allegations are taken as true, but conclusory statements or 'bare

14 CV 1401 JLS WVG

assertions' are discounted." *Recinto v. United States Dep't of Veterans Affairs*, 706 F.3d 1171, 1177 (9th Cir. 2013.)

### B.    Federal Preemption.

"Federal law may preempt state law in three ways: (1) express preemption; (2) field preemption; and (3) conflict preemption." *Gadda v. Ashcroft*, 377 F.3d 934, 944 (9th Cir. 2004). Defendants' motion is limited to conflict preemption. Mot. at 6. Plaintiffs will limit their analysis accordingly.

California is well within its police powers to enact legislation to protect its citizens from deceptive advertising. *Farm Raised Salmon Cases*, 42 Cal.4th 1077, 1088 (2008). In fact, one notable California case states that California has "a fervent interest" in protecting its citizens from deceptive advertising. *Keimer v. Buena Vista Books*, 75 Cal.App.4th 1220, 1230 (1999). "In preemption analysis, courts should assume that 'the historic police powers of the States' are not superseded 'unless that was the clear and manifest purpose of Congress.'" *Arizona v. US*, 132 S.Ct. 2492, 2501 (2012). Therefore, "[p]reemption law begins with the presumption that Congress does not 'intend to displace state law.'" *Holmes v. Merck & Co.*, 697 F.3d 1080, 1085 (9th Cir. 2012). Defendants bear the burden of establishing preemption. *Jimeno v. Mobil Oil Corp.*, 66 F.3d 1514, 1526 n. 6 (9th Cir. 1995); *Motus v. Pfizer Inc.*, 127 F.Supp.2d 1085, 1092 (C.D. Cal. 2000).

"Conflict preemption … has two forms: impossibility and obstacle preemption." *United States v. Arizona*, 641 F.3d 339, 345 (9th Cir. 2011) affirmed in part, reversed in part on other grounds 132 S.Ct. 2492 (2012); *Gilstrap v. United Air Lines, Inc.*, 709 F.3d 995, 1008 (9th Cir. 2013). Plaintiffs will separately address these two forms of conflict preemption.

### IV.   THERE IS NO CONFLICT PREEMPTION BECAUSE DEFENDANT MAY COMPLY WITH BOTH THE CALIFORNIA STATUTE AND THE FEDERAL STATUTES.

The presence of "conflict preemption will be found when simultaneous

7

compliance with both state and federal directives is **impossible**." *Viva! International Voice for Animals v. Adidas Promotional Retail Operations, Inc.*, 41 Cal.4th 929, 936 (2007). "The existence of a hypothetical or potential conflict is insufficient to warrant the pre-emption of the state statute." *Rice v. Norman Williams Co.*, 458 U.S. 654, 659 (1982). Further, "courts are not to seek out conflicts between state and federal regulation where none clearly exist." *Pacific Legal Foundation v. State Energy Res. Conservation & Dev. Com.*, 659 F.2d 903, 919 (9th Cir. 1981).

A.   **California's "Made in USA" Statute Is Not Preempted by the FTC's "Made in USA" Standard.**

California's statute precludes the use of a "Made in USA" label if the product contains "any article, unit, or *part thereof*, has been entirely or substantially made … outside of the United States." *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal.App.4th 663, 684 (2006) [Italics in original]. This means "when merchandise consists of two or more physical elements or pieces, section 17533.7 also applies to any distinct component of merchandise that is necessary for its proper use or operation." *Benson v. Kwikset Corp.*, 152 Cal.App.4th 1254, 1273 (2007). This statute is different than the federal "Made in USA" standard.

The federal "Made in USA" standard requires that "[a] product that is all or virtually all made in the United States will ordinarily be one in which all significant parts and processing that go into the product are of U.S. origin." *Colgan*, at 688 citing Fed. Trade Com., *Enforcement Policy Statement on United States Origin Claims*, 62 Fed. Reg. 63756, 63768 (Dec. 2, 1997) fn. omitted. "'In other words, where a product is labeled or otherwise advertised with an unqualified 'Made in USA' claim, it should contain only a *de minimis*, or negligible, amount of foreign content.'" *Id*. The federal standard employs a case-by-case review and looks at a "number of factors" to determine whether the product is "Made in

8

USA." *Id.* at 688-689 citing FTC Enforcement Policy Statement at 63768-63769. These factors include (1) "the location of a product's final assembly," (2) whether the product was "substantially transformed" in the United States and (3) "the percentage of the total cost of manufacturing the product that is attributable to U.S. costs ... and to foreign costs." *Id.*

There is no dispute California's "Made in USA" statute and the federal "Made in USA" statute are different in their treatment of component parts within a product. Defendants, however, ignore the fundamental principal that "the mere existence of a different state standard does not inevitably lead to a conflict with federal law; rather, the challenged state law must in some manner impair the attainment of federal objectives." *People v. Conklin*, 12 Cal.3d 259, 270-71 (1974). "A State may voluntarily impose substantive requirements that are more restrictive than what federal law would require, but not less restrictive." *Northwest Environmental Defense Center v. Owens Corning Corp.*, 434 F.Supp.2d 957, 973-74 (D. Or. 2006); *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 145 (1963). "Federal law sets a floor, i.e., the minimum requirements that must be met." *Northwest Environmental*, at 973.

This is precisely the situation with the California's "Made in USA" statute at issue in this case.[6] In fact, this Court recently found that "[a]lthough the laws set out different standards for the use of 'Made in U.S.A.' labels, it would not be impossible for Defendants to comply with both laws." *Paz,* 2014 U.S. Dist. LEXIS 156413, at *8; *see also Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc.,* 742 F.3d 414, 429-30 (9th Cir. 2014) (quoting *Nat'l Ass'n of the Deaf v. Netflix, Inc.,* 869 F.Supp.2d 196, 205 (D. Mass. 2012) (internal quotations omitted) ["To the extent that the federal captioning scheme and the

---

[6]   California has historically been a leader in promulgating environmental standards, labor standards, and other key standards that are higher than or more restrictive than similar federal standards in an interest to protect its citizenry.

DPA may require different captioning requirements or deadlines, these differences do not 'create a positive repugnancy between the two laws' or otherwise demonstrate an irreconcilable conflict between federal law and the DPA because CNN can comply with both."].

The federal statute permits manufacturers to label their products as "Made in USA" even if they use small amounts of foreign-made component while California law permits products to be labeled as "Made in USA" only if all of the components are made in the United States. There simply is no "impossibility" argument available to Defendants because a product that is entirely made of U.S.-made component parts can properly labeled as "Made in USA" under both the federal standard and the California statute.  Since Defendants make no showing that complying with both the federal and California statute is "impossible," the Motion should be denied on that basis alone.

**B.      California Law is Consistent with the Federal Regulations Promulgated Under the Textile Fiber Products Identifications Act.**

Defendants also argue there is a conflict between the California "Made in USA" law and the Textile Fiber Products Identifications Act ("TFPIA"). According to Defendants, "federal rules mandate inclusion of 'Made in the U.S.A.' or similar phrasing on labeling, even if the garments include components obtained from outside the United States."  Motion at 15 [Emphasis omitted].  This Court rejected an identical argument in *Paz,* finding that the TFPIA does *not* require Defendants to use a "Made in U.S.A." label even if the garment includes foreign-made materials and concluding that "the TFPIA does not require labeling that is prohibited by California law." 2014 U.S. Dist. LEXIS 156413, at *13.  In point of fact, the federal regulations and California law are actually substantively similar in their treatment of the subject.

The Code of Federal Regulations ("CFR") promulgated under the TFPIA

states that "[e]ach textile fiber product completely made in the United States of materials that were made in the United States shall be labeled using the term *Made in U.S.A.* or some other clear and equivalent term." 16 C.F.R. § 303.33, subd. (a)(2) [Italics in original].  This is consistent with California law as both the product and *its component parts* must be made in the United States.  It is worth noting that Defendants elected to ignore this requirement in their Motion.

Instead, their Motion focuses on the next subsection in the CFR that states if the "textile fiber product [is] made in the United States either in whole or in part of imported material, shall contain a label disclosing these facts." 16 C.F.R. §303.33, subd. (a)(3).  This subdivision states:

> (3) Each textile fiber product made in the United States, either in whole or in part of imported materials, shall contain a label disclosing these facts; for example:
>
> Made in USA of imported fabric
>
> or
>
> Knitted in USA of imported yarn

*Id.*

The CFR's use of the phrase "for example" is telling.  The CFR does not mandate the use of the "Made in USA of imported fabric" label with wording such as "shall" or "must."  This is of critical importance to the analysis because the word "example" is defined by Webster's Dictionary as "something or someone chosen from a group in order to show what the whole group is like."  Accordingly, a wide range of labeling options were available to Citizens that would have made the labeling on the jeans both truthful and compliant with California law such as "Made in the U.S.A. with foreign made fabric, buttons, zippers, and thread," "Made in USA of globally sourced component parts," "Sewn in USA from Italian Fabric and Chinese made accessories," etc.  To further emphasize this point, the

11

CFR (in a section of the CFR that was ignored by Defendants) lists various "examples" of labeling options that a manufacturer (such as Citizens) could have used on the jeans when utilizing both foreign and domestic manufacturing process:

(i) The manufacturing process in the foreign country and in the USA; for example:

"Imported cloth, finished in USA"

or…

"Made in [foreign country], finished in USA"

or…

"Made in [Foreign Country]/fabric made in USA"

or

"Knit in USA, assembled in [Foreign Country]".

16 C.F.R. §303.33, subd. (a)(4)(i).

Given the plethora of *truthful* labeling options available to Citizens (all of which would comply with California's "Made in USA" statute), it is difficult to see how its use of the false "Made in USA of imported fabric" label inherently creates a conflict between federal and state law. As this Court recognized in *Paz,* Defendants "can simply indicate on the label that their products were 'Made in U.S.A. of imported fabric and components,' or something similar that accurately describes where the parts of the product and the product as a whole were sourced and made." 2014 U.S. Dist. LEXIS 156413, at *13-14. Again, the "Made in USA of imported fabric" labeling issue is limited to the subclass, which is not the gravamen of Plaintiffs' false labeling contentions against Defendants.

Moreover, it is important to note that to the extent Citizens labeled their jeans as "Made in the USA with imported fabric," the California "Made in USA" statute would <u>not</u> apply to such representations. The California "Made in USA" statute applies only to unqualified "Made in USA" labels. Plaintiffs' legal theory

supporting the subclass is a more general violation of California's Unfair Competition Law ("UCL") based on a material omission/half-truth. This material omission/half-truth is that many additional components of the jeans (in addition to the fabric) are foreign-made.[7] Such representations, if false, are actionable pursuant to the California UCL and/or California's False Advertising laws (i.e., Cal. Business & Professions Code §§ 17500 *et seq.*).

In either event, California law is not preempted because it is not "impossible" to comply with both the California law and the TFPIA based on the plethora of alternative and *truthful* labeling options available to Citizens. *See Paz,* 2014 U.S. Dist. LEXIS 156413, at *13-16.

## V. THERE IS NO EVIDENCE SHOWING CALIFORNIA'S "MADE IN USA" STATUTE IS INCONSISTENT WITH CONGRESSIONAL OBJECTIVES.

Defendants correctly note that federal preemption can occur when the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Crosby v. National Foreign Trade Council,* 530 U.S. 363, 373 (2000). "'[O]bstruction preemption focuses on both the objective of the federal law and the method chosen by Congress to effectuate that objective, taking into account the law's text, application, history, and interpretation.'" *McDaniel v. Wells Fargo Investments, LLC,* 717 F.3d 668, 674 (9th Cir. 2013) citing *Ting v. AT&T,* 319 F.3d 1126, 1137 (9th Cir. 2003).

The federal "Made in USA" standard states "[n]othing in this section shall preclude the application of other provisions of law relating to labeling." 15 USC § 45a. "The statutory 'related to' text is 'deliberately expansive' and

---

[7] For example, a label stating "Made in USA of high quality Italian component parts" would certainly be actionable under California law if the "high quality" component parts were actually made in China. The California "Made in USA" statute would not apply to such representations, but California's UCL would apply pursuant to the "unfair" prong of the UCL. The UCL prohibits not only unlawful conduct, but "unfair" conduct that violates the "policy or spirit" of the law (the underlying law being the California "Made in USA" statute).

1
2
3
4
5
6
7
8
9
10
11
12
13
14

'conspicuous for its breadth.'" *Dilts v. Penske Logistics, Inc.*, 2014 U.S. App. LEXIS 12933, *12 (9th Cir. July 9, 2014) citing *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383–84 (1992) (internal quotation marks omitted).  Based on the language within 15 USC § 45a, it is evident that Congress intended to allow other laws to complement the federal "Made in USA" standard. *See Paz,* 2014 U.S. Dist. LEXIS 156413, at *12 ["there is nothing in this portion of the statute [15 U.S.C. § 45a] that indicates Congress intended to preempt the field of 'Made in U.S.A.' labels."].  The same is true of the TFPIA.  Section 70k of the TFPIA (15 U.S.C. § 70k) states that "[t]he provisions of this subchapter shall be held to be in addition to, and not in substitution for or limitation of, the provisions of any other Act of the United States." *Id.*  Again, Congress explicitly acted to permit other laws to supplement the TFPIA. *Paz,* 2014 U.S. Dist. LEXIS 156413, at *16 ("Defendants have failed to show Plaintiff's ['Made in U.S.A.'] claims are preempted by the TFPIA.")

15
16
17
18
19
20
21
22
23
24

       Defendants cite two objectives underlying the federal law, the first being to "prevent [ ] consumer deception." Mot. at 12.  Plaintiffs agree with Defendants that the goal of the federal law is to prevent consumer deception, a purpose that is shared by California state law.  California recognizes "the policies underlying the federal and California ['Made in USA'] laws are the same." *Colgan, supra*, 135 Cal.App.4th at 689; *Paz,* 2014 U.S. Dist. LEXIS 156413, at *9 n.2.  "The object is to protect consumers from being misled when they purchase products in the belief that they are advancing the interests of the United States and its industries and workers." *Colgan*, 135 Cal.App.4th at 689.  As explained by *Paz*:

25
26
27
28

              Accurate labeling of this ["Made in U.S.A."] information, in
              turn, allows consumers to make informed decisions about
              whether their purchases "support fellow Americans" or "harm
              the American manufacturing base[.]" 62 Fed. Reg. at 63758-59.
              These corresponding benefits are echoed in the California law.

14

> *See Kwikset Corp. v. Superior Court,* 51 Cal. 4th 310, 329 (2011) (quoting *Colgan,* 135 Cal. App. 4th at 689) (stating purpose of California law "'is to protect consumers from being misled when they purchase products in the belief that they are advancing the interests of the United States and its industries and workers.'").

*Id.*

Defendants mistakenly conclude that there is a second purpose of the federal law, "encouraging businesses to manufacture in the United States by allowing them to use the powerful 'Made in the U.S.A.' label." Mot. at 12. Although manufacturers can benefit from using a "Made in U.S.A." label and this may be a policy consideration to recognize, there is no indication that a manufacturer's benefit is an *objective* underlying the federal law. Defendants offer little to support their position. Defendants quote the following from 62 FR 25020-01:

> As the perception grows that America is losing jobs due to a shrinking manufacturing base, and the availability of truly U.S.A products declines, the fact that a product is Made in the USA. becomes increasingly valuable to consumers who wish to buy American.

Mot. at 9. Not only does this language alone demonstrate the legislative intent to provide truthful labeling to consumers, but Defendants fail to include the next sentence, which states, "In such a climate, we believe it becomes more, not less, important to ensure that manufacturers are not using deceptive claims." 62 FR 25020-01 at 25023 (underline added). Thus, it is clear that the purpose is to protect consumers against deceptive advertisements and not to benefit manufacturers. The only remotely relevant support provided by Defendants comes from 62 FR 63756-01 at 63766, which states that the comparative "Made in U.S.A" claims are useful for manufacturers to provide a distinction between the domestic content of their products and those who engage in less domestic manufacturing. Again, Defendants ignore the context in which this statement was made. The preceding sentences within the same paragraph as the quoted language discuss how qualified

15

U.S. origin claims can provide valuable information to consumers, and that "all such claims must be truthful and substantiated." *Id.* Although a "Made in U.S.A." label may be beneficial to manufacturers, the intended purpose of the federal statute is not to advance the interests of manufacturers. It is to inform consumers.

With a clear purpose underlying the federal law, it is glaringly apparent that the California state law in no way impedes any federal objective. "If the purpose of the false advertising law is to protect consumers from fraud and deceit, it is difficult to see how that purpose is not served or is affirmatively violated, by a label that accurately describes where a product and all its component parts are sourced and manufactured. Defendants' argument to the contrary, that section 17533.7 prohibits such labels, even when they are accurate and not misleading, strains the purpose of the statute, the FAL in general and common sense." *Paz,* *16.

Defendants postulate a seriously flawed argument that the enforcement of the state law will deprive Defendants of a right that the federal laws provide, the right to use the "Made in U.S.A." label. As discussed above, a more restrictive state requirement does not equate to a conflict with federal law, or the taking away of a right, unless it impairs a federal objective. *Conklin,* 12 Cal. 3d at 270-71; *Northwest Environmental Defense Center,* 434 F.Supp.2d at 973-74. In *Conklin,* defendants argued that a state statute was preempted by federal law since it forbade wiretapping unless *all* parties to the communication consented, whereas the federal law only required the consent of *one* party. 12 Cal. 3d at 270. Since the objective of the federal law was to protect privacy, the state law did not impede this objective but rather fulfilled and furthered the objective. *Id.* at 271-72. Similarly, the more restrictive state law here furthers the federal objective (not impair it).

Further, the cases cited by Defendants in support of its argument are inapposite. *See Paz,* 2014 U.S. Dist. LEXIS 156413, at *9 n.2 ["Given that the purposes of the [state and federal] statutes are the same, it is not apparent on the

1  present facts how compliance with one would be an obstacle to the other."]

2  In *Teltech Sys., Inc. v. Bryant,* 702 F.3d 232 (5th Cir. 2012), the federal law

3  <u>explicitly</u> outlawed the stricter state law requirement, therefore the state law was

4  preempted.  This is not the case here.  Specifically, in *Teltech Sys., Inc.*, the state

5  law at issue prohibited phone spoofing with the intent to "deceive, defraud or

6  mislead" the recipient of the call ("non-harmful spoofing"), whereas the federal

7  law prohibited spoofing with the intent to "defraud, cause harm, or wrongfully

8  obtain anything of value" ("harmful spoofing").  *Id.* at 234.  After reviewing the

9  Congressional minutes, it became apparent that Congress intended only to prohibit

10  harmful spoofing and actually intended to protect non-harmful spoofing.  *Id.* at 238.

11  In passing the federal bill, house members explicitly stated "We drafted . . .

12  carefully to ensure that we only prohibit [spoofing] intending to do harm. . . .

13  [T]his bill protects those legitimate [spoofing] practices."  *Id.*  Thus, because the

14  clear intent of the federal bill was to prohibit harmful spoofing while protecting

15  non-harmful spoofing, the state law was contrary to federal objectives.

16  *Franklin Nat. Bank of Franklin Square v. New York,* 347 U.S. 373 (1954)

17  presented the narrow question of whether federal statutes authorizing national

18  banks to receive savings deposits conflicted with New York state law that

19  prohibited national banks from using the word "saving" or "savings" in their

20  advertising or business.  The state statute only permitted New York state mutual

21  savings banks to use that language.  *Id.* at 374.  The Court held that the two statutes

22  were incompatible, explaining "We cannot believe that the incidental powers

23  granted to national banks should be construed so narrowly as to preclude the use of

24  advertising in any branch of their authorized business.  It would require some

25  affirmative indication to justify an interpretation that would permit a national bank

26  to engage in a business but gave no right to let the public know about it."  *Id.* at

27  377-78.  Thus, by prohibiting *any* use of the word savings, the New York law

28

17

clearly discriminated against national banks in favor of state mutual savings banks.

In *Fid. Fed. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141 (1982), the preamble accompanying the final publication of the relevant federal regulation explained the board's intent to displace state law, stating that the due-on-sale practices of federal savings and loans were to be governed "exclusively by Federal Law" and that "[federal] associations shall not be bound by or subject to any conflicting State law which imposes different . . . due-on-sale requirements." *Id.* at 147. Thus, since the state law prohibited the enforcement of a due-on-sale clause that the federal law permitted, the Court concluded that an actual conflict existed and the federal law pre-empted the conflicting state limitations. *Id.* at 159.

Lastly, in *McDaniel v. Wells Fargo Investments, LLC,* 717 F.3d 668 (9th Cir. 2013), plaintiffs' employers only allowed them to open self-directed trading accounts in house, which amounted to self-patronage in violation of state law. The court ruled that the state law was preempted by the federal law because the purpose of the federal rule was to afford employers discretion over how to supervise their employees according to what was reasonable in light of each broker's or dealers business. *Id.* at 676. The employer's ability to have discretion over the policies implemented was "critical to effectively preventing the misuse of material, nonpublic information." *Id.* Thus, the state law that restricted the employer's discretion impeded the federal objective and was preempted. *Id.*

Contrary to these cases, the purpose of both the federal and state laws is in no way impeded by a stricter state requirement that mandates a more truthful labeling requirement. Therefore, state law is hardly an obstacle and with no contrary argument(s) in the Motion, Defendants utterly fail to demonstrate any preemption that would warrant the granting of the Motion.

## VI.   CALIFORNIA'S "MADE IN USA" STATUTE DOES NOT VIOLATE THE DORMANT COMMERCE CLAUSE.

Defendants' next argument is that California's "Made in USA" statute is

unconstitutional because it violates the Dormant Commerce Clause.  The starting point of such an argument is "a statute, once duly enacted, 'is presumed to be constitutional.'"  *Copley Press, Inc. v. Superior Court,* 39 Cal.4th 1272, 1302 (2006) [citing *Lockyer v. City of San Francisco*, 33 Cal.4th 1055, 1086 (2004)]. "Unconstitutionality must be clearly, positively, and certainly shown by the party attacking the statute, and [the courts] resolve doubts in favor of the statute's validity." *Id.* (emphasis added).  Defendants again fall short of their burden.

Courts employ a two-tiered approach to analyze a statute under the Dormant Commerce Clause.  "When a state statute directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests, [courts] have generally struck down the statute without further inquiry." *Brown-Forman Distillers Corp. v. N.Y. State Liquor Authority*, 476 U.S. 573, 579 (1986).  "When, however, a statute has only indirect effects on interstate commerce and regulates evenhandedly, [courts] have examined whether the State's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits." *Id.*  Defendants argue California's "Made in USA" statute indirectly effects interstate commerce so Plaintiffs will limit their argument to the second prong.  Mot. at 15-19.

"Under the 'balancing' approach, a court must identify the state's interests in its legislation, ensure that they are legitimate, and then determine whether the state law imposes an excessive burden on interstate commerce in relation to those legitimate interests." *Valley Bank of Nevada v. Plus System, Inc.*, 914 F.2d 1186, 1194 (9th Cir. 1990).  "For a facially neutral statute to violate the commerce clause, the burdens of the statute must so outweigh the putative benefits as to make the statute unreasonable or irrational." *Alaska Airlines, Inc. v. Long Beach* 951 F.2d 977, 983 (9th Cir. 1992).

According to Defendants, the California statute is an impermissible violation of the Dormant Commerce Clause, not because it is impossible for manufacturers such as Defendants to comply with California law, but rather because it is unduly burdensome because manufacturers would have to either "(i) refrain from selling their products in California, (ii) label all their products for sale to California, thus losing the benefits of the "Made in the U.S.A." label, or (iii) keep a separate supply of product on hand for sales to California." Mot. at 19.  Defendants fail to acknowledge the fourth option, and most important option, which is to provide truthful labeling to consumers. Defendants also make the far-fetched claim that requiring a truthful label under state law would be contrary to public policy, "harmful to the public," and would deter companies from manufacturing in the United States. Mot. at 17-18.[8] This is simply not so.

As Defendants recognize in their brief, "the fact that a product is Made in the USA. [sic] becomes increasingly valuable to consumers who wish to buy American." Def. Mot. at 9 [citing 62 FR 25020-01 at 25023).  Defendants further recognize that consumers feel a "Made in USA" label means supporting jobs or employment in the United States, keeping dollars in the United States, or other benefits relating to the United States economy. Def. Mot. at 10.  Thus, full disclosure relating to where a product is made or where its component parts come provides a meaningful benefit to consumers.[9]  Furthermore, contrary to

---

[8]    To the extent Defendants rely on or cite to studies or surveys sponsored by the FTC, such studies are unsubstantiated, not relied upon in the FAC, and create issues of fact not inappropriately considered on a motion to dismiss.  *Arpin v. Santa Clara Valley Transp. Agency,* 261 F.3d 912, 925 (9th Cir. 2001) [excluding "evidence outside the complaint [because] . . . such extraneous evidence should not be considered in ruling on a motion to dismiss."]

[9]    "**Simply Stated: labels matter.**  The marketing industry is based on the premise that labels matter, that consumers will choose one product over another similar product based on its label and various tangible and intangible qualities they may come to associate with a particular source. . . . In particular, **to some consumers**, the "Made in U.S.A." label matters." *Kwikset Corp.,* 51 Cal.4th at 328.

20

Defendants' argument, the California statute would not deter businesses from manufacturing within the United States or have a negative impact on the economy. Rather, a truthful labeling requirement would encourage companies to manufacture entirely within the United States because they would be able to use the unqualified "Made in U.S.A" label.  Moreover, even if a manufacturer had to add a qualifying statement that its component parts were made elsewhere, it would still be entitled to use the "Made in U.S.A." language. Thus, a manufacturer still can label its products as made in the USA and receive the economic benefits of doing so.

When assessing the burden analysis, the case of *Ferguson v. Friendfinders, Inc.*, 94 Cal.App.4th 1255 (2002), is persuasive.  In *Ferguson*, the court considered whether a consumer protection statute prohibiting deceptive, unsolicited emails violated the Dormant Commerce Clause.  It found California had "a substantial legitimate interest in protecting its citizens from the harmful effects of deceptive [unsolicited commercial emails]" and "furthers that important interest."  *Id*. at 1268.   The court also held the statute "requires truthfulness in labeling" and "the burdens imposed on interstate commerce ... are minimal." *Id*. at 1269.  In fact, the court noted the statute "actually 'facilitates [interstate commerce] by eliminating fraud and deception.'"  *Id*. at 1269 (citing *State v. Heckel,* 24 P.3d 404, 411(2001)).

Similarly, California's "Made in USA" statute affects an out-of-state entity only if that entity has affirmatively chosen to send its products for sale into California. *S.D. Myers, Inc. v. City & County of San Francisco,* 253 F.3d 461, 469 (9th Cir. 2001).  As stated *supra*, California has a legitimate police power in protecting the public from false advertising. *Keimer*, at 1230. "Obviously, legislation designed specifically to protect consumers from deceptive or misleading advertising directly advances the state's interest in preventing such abuses." *Id*. at 1231.  The only burden on Defendants would be a simple change to a qualified

country of origin designation such as "Assembled in USA," "Built in the USA, "Made in USA with domestic and foreign made component parts," or numerous other more accurate alternatives.

Undeterred, Defendants cite two cases in support of their position: *Bibb v. Navajo Freight Lines, Inc.*, 359 U.S. 520 (1959) and *Southern Pacific Co. v. State of Arizona ex rel. Sullivan*, 325 U.S. 761 (1945). A cursory review of these cases show that they are not helpful to Defendants, beyond the general legal principals.

The Supreme Court in *Bibb* held an Illinois statute requiring a certain type of mudguard violated the Dormant Commerce Clause. *Id*. at 521-522. The decision was founded on an Illinois requirement that was the opposite of other states statutes outlawing these mudguards and which made compliance with other state statutes and the Illinois statute impossible. *Id.* at 523. As a result, trucks traveling through Illinois had to stop and change the mudguards on their vehicle in order to pass through the state, which was a costly and timely exercise, and then had to change the mudguards back once they left the state in order to comply with the rest of the country's laws. *Id.* at 527. The Court found that the mudguard required by Illinois had no advantage over the mudguards used in other states and actually posed a greater safety hazard. *Id.* at 525. The Court said: "A State which insists on a design out of line with the requirements of almost all the other States may sometimes place a great burden of delay and inconvenience on those interstate motor carriers entering or crossing its territory." *Id.* at 529-530. Thus, compliance with the Illinois statute would automatically make the truck illegal once it crossed into the vast majority of other states and had a severe impact on interstate commerce. Unlike *Bibb*, compliance with the California statute does *not* interfere with or violate the laws *of any other state*. In fact, compliance with the California law further promotes the purpose of the laws of all other 49 states (to prevent

22

deceptive advertising).

The challenged statute in *Southern Pacific Co.* concerned the number of railroad cars operating in Arizona and conflicted with the Commerce Clause. 325 U.S. 761 at 763.  While others states did not limit the length of railroad trains, Arizona did, making it illegal for certain sized trains to enter the state. *Id.* at 763. "The serious impediment to the free flow of commerce by the local regulation of train lengths and the practical necessity that such regulation, if any, must be prescribed by a single body having a nation-wide authority are apparent." *Id.* at 775.  The Arizona statute "does go too far" because "[i]ts attempted regulation of the operation of interstate trains cannot establish nation-wide control such as is essential to the maintenance of an efficient transportation system, which Congress alone can prescribe." *Id.* at 781-782.  The Court held that the law "materially impedes the movement of appellant's interstate trains through that state and interposes a substantial obstruction to the national policy proclaimed by Congress, to promote adequate, economical and efficient railway transportation service." *Id.* at 773.  Here, the California statute does not impede interstate travel, is not contrary to Congress' objectives, and is not contrary to other state laws.

As evidenced above, Defendants take these case out of context.  Both *Bibb* and *Southern Pacific Co.* involve the regulation of interstate vehicles whose travel is impeded by a single state's statute that is impossible to comply with while also complying with other state laws.  No such extraordinary circumstance exists here. Defendants present no extrinsic evidence (nor can they in this particular type of motion) showing the policy of California is misplaced.  Defendants proffer no other state statutes showing the complete conflict in laws with California or any substantial impediment to interstate commerce.

Finally, Defendants suggest California's "Made in USA" results in a

nationwide application of California law because nationwide corporations selling products must comply with California's law. *See* Def. Mot. at 16-19.  An identical argument was raised and rejected in *S.D. Myers* when considering a city ordinance. In response, the court stated:

> Even were we to assume that the Ordinance's requirements constitute an economic penalty, narrowly construed the Ordinance only applies in the City, on City-owned property, or as to employees working on a City contract. Thus, the Ordinance is "supported by the [City]'s interest in protecting its own consumers and its own economy." *Id.*, at 572. While it is possible that the City could attempt to wield extraterritorial control through broadly interpreting section 12B. 1(d)(iii), on this facial challenge we will not invalidate the Ordinance unless Myers can "establish that no set of circumstances exists under which the [Ordinance] would be valid." See *Salerno*, 481 U.S. at 745.

*Id.* at 472.  As previously concluded, "[a]lthough the laws set out different standards for the use of 'Made in the U.S.A.' labels, it would not be impossible for Defendants to comply with both laws.

California's "Made in USA" only applies to products being sold within the borders of California to its citizens.  California is furthering its police powers and its policy of consumer protection.  Plainly, the statute does not violate the Dormant Commerce Clause, and the Motion can be denied on this basis.

## VII.   CONCLUSION.

Based on the foregoing reasons, Defendants have failed to show that Plaintiffs' claims are preempted by either the FTC Act or the TFPIA or that the California "Made in U.S.A." statute violates the Dormant Commerce Clause. Plaintiffs respectfully request that the Court deny Defendants' motion to dismiss

/ / /

/ / /

and require Defendants to file an answer within a reasonable time period.

Dated:  January 2, 2015                 DEL MAR LAW GROUP, LLP


By:  /s/John H. Donboli
      John H. Donboli
      E-mail:  jdonboli@delmarlawgroup.com
      Attorneys for: LOUISE CLARK

LEVI & KORSINKSY, LLP

By:  /s/Shannon L. Hopkins
      Shannon L. Hopkins (admitted *pro hac vice*)
      E-mail: shopkins@zlk.com
      Nancy A. Kulesa (admitted *pro hac vice*)
      E-mail: nkulesa@zlk.com
      Attorneys for: ROBYN MARNELL

25