1
2
3
4
5
6
7
8

## UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

LOUISE CLARK, an individual and
on behalf of all others similarly
situated,

CASE NO. 14-CV-1404 JLS (WVG)

11

**ORDER DENYING DEFENDANTS'
MOTION TO DISMISS FIRST
AMENDED COMPLAINT**

12

Plaintiff,

13

vs.

(ECF No. 23)

14
15

CITIZENS OF HUMANITY, LLC,
a Delaware limited liability company;
MACY'S, INC., a Delaware
corporation; and DOES 1 through 100,
inclusive,

16
17

Defendants.

18
19

    Presently before the Court is Defendants Citizens of Humanity, LLC and

20

Macy's, Inc.'s ("Defendants") Motion to Dismiss First Amended Complaint ("MTD").

21

(ECF No. 23.) On January 14, 2015, Defendant BOP, LLC filed a Notice of Joinder

22

joining the instant MTD. (ECF No. 35.) Also before the Court is Plaintiffs Louise Clark

23

and Robyn Marnell's ("Plaintiffs") Response in Opposition to (ECF No. 31) and

24

Defendants' Reply in Support of (ECF No. 34) the MTD. A hearing on the Motion to

25

Dismiss was held on January 22, 2015. Having considered the parties arguments and

26

the law, the Court **DENIES** Defendant's Motion to Dismiss.

27

## BACKGROUND

28

    In April 2014, Plaintiff Robyn Marnell purchased jeans manufactured and sold

by Defendant Citizens of Humanity from Defendant BOP, LLC. (FAC 7,[1] ECF No. 18.) In May 2014, Plaintiff Louise Clark purchased jeans manufactured and sold by Defendant Citizens of Humanity from Defendant Macy's, Inc. (*Id*.) The jeans purchased by both plaintiffs were "marked with a 'Made in the U.S.A.' country of origin designation when the product[s] actually contain[] component parts made outside of the United. States."[2] (*Id*.) Plaintiffs allege that they relied on Defendants' representations that the jeans were made in the United States, but that various component parts, including the fabric, thread, buttons, subcomponents of the zipper assembly, and/or rivets, were actually manufactured outside of the Untied States. (*Id*. at 3, 8.) Plaintiffs further allege that because the jeans were not made entirely of products manufactured in the United States, they "are of inferior quality" and "less reliable" than jeans actually made entirely in the United States. (*Id*. at 8.) Plaintiffs allege that they overpaid for the items purchased and seek damages accordingly. (*Id*.)

On November 20, 2014, the Plaintiffs filed their FAC, which is the operative complaint. (ECF No. 18.) Plaintiffs bring this action as a class action. (FAC 9, ECF No. 18.) Plaintiffs assert three claims against Defendants: (1) violation of the California Consumers Legal Remedies Act; (2) violation of California Business and Professions Code § 17200 *et seq*; and (3) violation of the California Business and Professions Code § 17533.7.

On December 9, 2014, Defendants filed the instant MTD. Defendants ask the Court to dismiss Plaintiffs' FAC on the ground that § 17533.7 of the California Business and Professions Code is preempted by federal law. Defendants contend that Plaintiffs' first cause of action is preempted because it relies on the standard set out in § 17533.7. Defendants also ask the Court to dismiss this case on the ground that §

---

[1] For ease of reference, all page numbers cited to are the CM/ECF numbers at the top of the page.

[2] Some of the products purchased by the class bore a label that read "MADE IN U.S.A. OF IMPORTED FABRIC;" however, Plaintiffs allege that they "contained foreign-made component parts beyond the fabric." (FAC 9–10, ECF No. 18.)

14cv1404

17533.7 of the California Business and Professions Code violates the dormant commerce clause.

**REQUEST FOR JUDICIAL NOTICE**

Federal Rule of Evidence 201 provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." "Judicially noticed facts often consist of matters of public record." *Botelho v. U.S. Bank, N.A.*, 692 F. Supp. 2d 1174, 1178 (N.D. Cal. 2010) (citations omitted); *see also W. Fed. Sav. & Loan Ass'n v. Heflin Corp.*, 797 F. Supp. 790, 792 (N.D. Cal. 1992). While "a court may take judicial notice of the existence of matters of public record, such as a prior order or  decision," it should not take notice of "the truth of the facts cited therein." *Marsh v. Cnty. of San Diego*, 432 F. Supp. 2d 1035, 1043 (S.D. Cal. 2006).

Plaintiffs ask the Court to judicially notice one (1) document: a recent order issued by Judge Dana M. Sabraw denying a motion to dismiss based on federal preemption in a similar case captioned *Paz v. AG Adriano Goldschmeid, Inc. Et al.*, Case No. 14-CV-1372 DMS (DHB). (*See generally*, Request for Judicial Notice, ECF No. 31-1.) This document is available to the public and maintained by an official government entity. Its accuracy, therefore, cannot be reasonably disputed. Accordingly, the Court **GRANTS** Plaintiff's Request for Judicial Notice.

Defendants ask the Court to judicially notice three (3) documents: Federal Trade Commission, "Made in the USA" and Other U.S. Origin Claims, 62 F.R. 63755; Federal Trade Commission, Questions and Answers Relating to the Textile Fiber Products Identification Act and Regulations, April 1986; and Federal Trade Commission, "Complying with Made in USA Standard." (*See generally* Request for Judicial Notice, ECF No. 23-2; Ex. 1, ECF No. 23-3; Ex. 2, ECF No. 23-4; Ex. 3, ECF No. 23-5.) These documents are available to the public and maintained by an official government entity. Their accuracy, therefore, cannot be reasonably disputed.

1  Accordingly, the Court **GRANTS** Defendants' Request for Judicial Notice.

2  **LEGAL STANDARD**

3  **I.    Preemption**

4      Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the

5  defense that the complaint "fail[s] to state a claim upon which relief can be granted,"

6  generally referred to as a motion to dismiss. A party may move to dismiss a state law

7  claim pursuant to Rule 12(b)(6) on the ground that the state law claim is preempted by

8  federal law. *Silvas v. E\*Trade Mortg. Corp.*, 514 F.3d 1001 (9th Cir. 2008) (affirming

9  Rule 12(b)(6) motion on ground of preemption).

10     Article VI, clause 2 of the United States Constitution, referred to as the

11  Supremacy Clause, instructs that the laws of the United States "shall be the supreme

12  law of the land." U.S. Const. art. 6, cl. 2. "[T]he Supremacy Clause invalidates all state

13  laws that conflict or interfere with an Act of Congress." *Rose v. Arkansas State Police*,

14  479 U.S. 1, 3 (1986).  Federal law may invalidate, or preempt, state law in three ways:

15  (1) express preemption; (2) field preemption; and (3) conflict preemption. *Silvas*, 514

16  F.3d at 1004. Express preemption requires a clear statement from Congress that federal

17  law preempts state law. (*Id.*) Field preemption applies "when federal regulation in a

18  particular field is so pervasive as to make reasonable the inference that Congress left

19  no room for the States to supplement it." (*Id.*) Finally, conflict preemption arises when

20  state law conflicts with federal law. (*Id.*)

21     Conflict preemption applies in two situations–when it is impossible to comply

22  with both state and federal law, or when the state law poses an obstacle to

23  accomplishing and executing Congress' purposes and objectives. *Bank of America v.*

24  *City & Cnty. of San Francisco*, 309 F.3d 551, 558 (9th Cir. 2002) (quoting *Florida*

25  *Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–43 (1963); *Hines v.*

26  *Davidowitz*, 312 U.S. 52, 67 (1941)).  The federal law in question may be a statute or

27  a regulation because federal regulations promulgated by federal agencies are afforded

28  the same preemptive effect as federal statutes. *City of New York v. F.C.C.*, 486 U.S. 57,

63 (1988) ("[t]he phrase "Laws of the United States" [as stated in the Supremacy Clause] encompasses both federal statutes themselves and federal regulations that are properly adopted in accordance with statutory authorization").

When the laws are in an area in which the state law has historic police powers there is a presumption against preemption. *See Silvas*, 514 F.3d at 1004. Accordingly, "courts should assume that 'the historic police powers of the States' are not superseded 'unless that was the clear and manifest purpose of Congress.'" *Arizona v. U.S.*, 132 S.Ct. 2492, 2501 (2012) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)).

## II.    Dormant Commerce Clause

Article 1, section 8, clause 3 of the United States Constitution affords Congress the power "to regulate interstate and foreign commerce." *South-Central Timber Dev., Inc. v. Wunnicke*, 467 U.S. 82, 87 (1984). Although this is an affirmative grant of power, the Commerce Clause "has long been recognized as a self-executing limitation on the power of the States to enact laws imposing substantial burdens on such commerce." *Id*. The limitation placed on the States by the Commerce Clause is known as the dormant commerce clause. *Dep't of Revenue v. Davis*, 553 U.S. 328, 337 (2008).

"When a state statute directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests, [courts] have generally struck down the statute without further inquiry." *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 579 (1986). However, when "a statute has only indirect effects on interstate commerce and regulates evenhandedly, [courts] have examined whether the State's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits." *Id*. To conduct this balancing test, courts identify the state's interests in the legislation, "and then determine whether the state law imposes an excessive burden on interstate commerce in relation to those legitimate interests." *Valley Bank of Nevada v. Plus System, Inc.*, 914 F.2d 1186, 1194 (9th Cir. 1990). For a court to find that a

facially neutral statute violates the dormant commerce clause, "the burdens of the statute must so outweigh the putative benefits as to make the statute unreasonable or irrational." *Alaska Airlines, Inc. v. Long Beach*, 951 F.2d 977, 983 (9th Cir. 1992).

## ANALYSIS

## I.     Preemption

California's Business and Professions Code § 17533.7 reads:

> It is unlawful for any person, firm, corporation, or association to sell or offer for sale in this State any merchandise on which merchandise or on its container there appears the words 'Made in the U.S.A.,' 'Made in America,' 'U.S.A.,' or similar words when the merchandise or any article, unit or part thereof, has been entirely or substantially made, manufactured, or produced outside of the United States.

Cal. Bus. & Prof. Code § 17533.7. California courts have interpreted this section strictly such that "if the merchandise consists of separate, identifiable components, section 17533.7 requires '*any* article, unit, or part' of the merchandise to be 'entirely or substantially made, manufactured, or produced domestically to qualify for use of a 'Made in U.S.A.' or similar label." (MTD 9–10, ECF No. 23-1 (quoting *Benson v. Kwikset Corp.*, 152 Cal.App.4th 1254, 1272 (2007) (emphasis in original)).) Accordingly, " a product, like [the aircraft carrier] the U.S.S. Ronald Reagan, can be overwhelmingly and substantially 'made in the United States' but could not be claimed to have been 'made in the United States' unless is contained absolutely 100 percent American parts, down to the last screw." (*Id*. at 6 (quoting *Kwikset*, 152 Cal.App.4th at 1285 (dissenting opinion)).)

## A.     Federal Trade Commission Act

The Federal Trade Commission Act ("FTCA") reads, in relevant part:

> [t]o the extent any person introduces, delivers for introduction, sells, advertises, or offers for sale in commerce a product with a 'Made in the U.S.A.' or 'Made in America' label, or the equivalent thereof, in order to represent that such product was in whole or substantial part of domestic origin, such label shall be consistent with decisions and orders of the Federal Trade Commission issued pursuant to section 45 of this title.

15 U.S.C. § 45a. The Federal Trade Commission ("FTC") adopted the following

standard: "manufacturers shall be permitted to use the 'Made in the U.S.A.' label on products that are 'all or virtually all' made in the United States."[3] (MTD 16, ECF No. 23-1 (citing 62 FR 63756-01 at pp. 63757, 63764–65).) Although there is no bright line rule or percentage that deems products "all or virtually all" made in the United States, if foreign-made component parts comprise a "negligible portion of the product's total manufacturing costs and are insignificant parts of the final product," then the item will be considered to have been made in the United States. (*Id*. at 16–17.)

Defendants argue that this FTC regulation preempts California's Business and Professions Code § 17533.7 because the California law "stands as an obstacle to accomplishing the purposes" of the FTC regulation, which is one way to show conflict preemption. (*Id*. at 17.) Defendants assert that there are two purposes of the FTC regulation: (1) "preventing consumer deception," and (2) "encouraging businesses to manufacture in the United States by allowing them to use the powerful 'Made in the U.S.A.' label." (*Id*.) Defendants contend that § 17533.7 extinguishes businesses' right to use the "Made in the U.S.A." label by requiring that 100 percent of a product, including all of its component parts, be made in the United States to bear the "Made in the U.S.A." label, which they argue is impermissible. (*See id*. at 17–18 (citing *Teltech Sys., Inc. v. Bryant*, 702 F.3d 232, 237 (5th Cir. 2012) ("A state law is conflict-preempted . . . when federal law authorizes expressly an activity prohibited by state law")).) Defendants also argue that this is not a field in which the federal law sets a floor and states may enact more stringent standards, and that in this area, stricter regulations are not necessarily better. (*Id*. at 18.) The FTC's policy goal of encouraging "manufacturers to do at least some of their manufacturing in the United States" is

---

[3] The FTC formulated this regulation after surveying over 400 consumers throughout the United States to find out what "Made in the U.S.A." meant to them. (MTD 13, ECF No. 23-1.) Some people understand the phrase to mean the product was assembled in the United States; others understand the phrase to mean that not only was the product assembled in the United States, but that its component parts were also made in the United States. (*Id*.) The FTC determined "that most consumers would not be mislead by use of a 'Made in the U.S.A.' label, even when some foreign components are used in the product." (*Id*.) The FTC also considered the benefits afforded American businesses who are able to claim their products are "Made in the U.S.A." (*Id*. at 14–15.)

achieved by allowing manufacturers to use the "Made in the U.S.A." label as long as the bulk of their manufacturing is done in the United States; however, the California law removes this option. (*Id*.)

As an initial matter, Plaintiffs note that the FTCA does not preclude states from enacting labeling laws to apply in conjunction with the federal scheme. (Resp. in Opp'n 21, ECF No. 31 (quoting 15 U.S.C. § 45a ("[n]othing in this section shall preclude the application of other provisions of law relating to labeling")).) Plaintiffs argue that § 17533.7 and the FTC regulation can coexist because this is a situation in which a state has elected to impose stricter standards than the federal government and § 17533.7 does not hinder the FTC's objectives. (*Id*. at 17 (quoting *Northwest Environmental Def. Ctr. v. Owens Corning Corp.*, 434 F. Supp. 2d 957, 973–74 (D. Or. 2006) ("A state may voluntarily impose substantive requirements that are more restrictive than what federal law would require, but not less restrictive.")).) Further, Plaintiffs contend that "it would not be impossible for Defendants to comply with both laws." (*Id*. (quoting *Paz v. AG Adriano Goldschmeid, Inc.*, No. 14-CV-1372, 2014 WL 5561024, at *8 (S.D. Cal. 2014)).) Plaintiffs explain that products made entirely, including their component parts, in the United States may be properly labeled "Made in the U.S.A." under both California and federal law. (*Id*. at 18.) Additionally, Plaintiffs argue that § 17533.7 does not frustrate the objective of the FTC regulation–to prevent consumer deception–because the California law has the same intentions.[4] (*Id*. at 22.)

The Court concludes that  § 17533.7 is not preempted by the FTC regulation because it is not impossible to comply with both laws, nor does § 17533.7 stand as an obstacle to accomplishing the FTC regulation's objectives. A product that is entirely made and manufactured in the United States can bear the "Made in the U.S.A." label throughout the country. The FTC regulation states that manufacturers "shall be

---

[4]Plaintiffs rebuff Defendants' argument that there is a second objective of the federal law—"'encouraging businesses to manufacture in the United States by allowing them to use the powerful 'Made in the U.S.A.' label.'" (Resp. in Opp'n 23, ECF No. 31 (quoting MTD 12, ECF No. 23-1).)

14cv1404

permitted" to use the "Made in the U.S.A." label on clothing that is "all or virtually all" made in the United States; it does not mandate that they use such labels. Accordingly, manufacturers can comply with both laws by either only using the "Made in the U.S.A." label on items entirely made in this country, or by using a distinct label for clothing sold in California. While this may be burdensome or frustrating for Defendants and other manufacturers and retailers, it is not impossible. *See Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 429–30 (9th Cir. 2014) (quoting *Nat'l Ass'n of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196, 205 (D. Mass. 2012) ("To the extent that the federal captioning scheme and the [California Disabled Person's Act] may require different captioning requirements or deadlines, these differences do not 'create a positive repugnancy between the two laws' or otherwise demonstrate an irreconcilable conflict between federal law and the [California Disabled Person's Act] because CNN can comply with both.")).

Furthermore, § 17533.7 does not stand as an obstacle to accomplishing the goals of the FTC regulation because both schemes are aimed at preventing consumer deception. The parties disagree over whether promoting manufacturing in the United States is a second objective of the FTC regulation; however, if that is an objective, as Defendants suggest, it cannot be said that § 17533.7 stands as an obstacle to promoting it because surely § 17533.7 encourages some manufacturers to complete all of their manufacturing in the United States.

The Court also finds that § 17533.7 does not take away manufacturers' right to include "Made in the U.S.A." on their clothing labels; it merely inhibits manufacturers' ability to use an unqualified "Made in the U.S.A." label in California unless the product is 100 percent made in the United States. Although the FTC regulation permits use of an unqualified label on products not entirely made in the United States where § 17533.7 does not, the California law does not completely extinguish a right because manufacturers can still use the unqualified label in other states.

///

14cv1404

***B.***     ***Federal Textile Fiber Products Identification Act***

The Federal Textile Fiber Products Identification Act ("TFPIA") requires that any garment that is "processed or manufactured" in the United States include a "Made in the U.S.A." label, regardless of whether component parts are manufactured outside of the United States. (*Id*. at 19 (citing 15 U.S.C. § 70b).) Pursuant to the TFPIA, such labels may be accompanied by additional language such as "of imported fabric." (*Id*. at 20 (quoting 16 C.F.R. § 303.33(a)(3)).) Defendants argue that California's Business and Professions Code § 17533.7 stands in contrast to the TFPIA because the California law, as interpreted by the California state courts, prohibits the inclusion of "Made in the U.S.A." labels on garments that are comprised of component parts made outside of the United States. (*Id*.) Defendants believe that § 17533.7 is not silent on qualified labels; their position is that the words "Made in the U.S.A." or their equivalent, literally cannot appear on a label of a garment that is made up of component parts manufactured outside of the United States, such that qualified labels are not allowed.[5] (Reply 2, ECF No. 34.) At the January 22, 2015, hearing, Defendants further explained that they believe this is true regardless of what words come before or after "Made in the U.S.A.;" thus, a label that reads "Not Made in the U.S.A." would be impermissible under § 17533.7. Defendants argue that it is impossible to comply with both the TFPIA and California's Business and Professions Code § 17533.7 and, therefore, the California law is preempted. (Reply 5, ECF No. 34.)

In response, Plaintiffs argue that to comply with both § 17533.7 and the TFPIA, Defendants could label their products "Made in the U.S.A. with foreign made fabric,

---

[5]Defendants note that the *Kwikset* court "felt bound to follow the plain language of [§ 17533.7], despite the court's own misgivings about the wisdom of the statute." (Reply 2, ECF No. 34.) Further, Defendants argue that interpreting § 17533.7 literally also conforms to Ninth Circuit precedent. (*Id*. at 3 (citing *Int'l Ass'n of Machinists & Aerospace Workers, Local Lodge 964 v. BF Goodrich Aerospace Aerostructurers Grp.*, 387 F.3d 1046, 1051 (9th Cir. 2004) ("Where the statute's language is plain, the sole function of the courts is to enforce it according to its terms, for 'courts must presume that a legislature says in a statute what it means and means in a statute what it there says'") (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992)).) Lastly, Defendants note that § 17533.7 "has been around for 54 years [and] [d]uring that time, no California case has ever concluded that section 17533.7 permits the use of *qualified* "Made in the U.S.A." labels. (*Id*.)

buttons, zippers, and thread," or "Made in USA of globally sourced component parts." (Resp. in Opp'n 19, ECF No. 31.) Plaintiffs take the position, which the court adopted in the *Paz* order, that qualified "Made in the U.S.A." labels are permissible under California law. (*Id*. at 19–20.) Accordingly, using detailed labels that indicate which component parts are foreign and which are domestic allow a manufacturer or retailer to comply with both state and federal law, such that § 17533.7 is not preempted. (*Id*. at 21.)

Whether TFPIA preempts § 17533.7 turns on whether § 17533.7 permits the use of qualified "Made in the U.S.A." labels. Plaintiffs and Defendants fundamentally disagree over whether § 17533.7 permits such labels. Plaintiffs argue that qualified labels are permitted, while Defendants argue they are not. Notwithstanding Defendants' argument to the contrary, the Court finds that the statute itself is silent on qualified labels. *See* Cal. Bus. & Prof. Code § 17533.7.  Moreover, the state cases cited to by Defendants, such as *Kwikset*, provide minimal guidance because they deal with unqualified labels.

The Court finds that § 17533.7 allows for the use of qualified "Made in the U.S.A." labels. In *Paz*, the court followed a common sense approach and concluded that § 17533.7 allows for qualified "Made in the U.S.A." labels such that compliance with both California and federal law is possible with the same labels, and this Court agrees. *Paz*, 2014 WL 5561024, at * 9–10. Thus, TFPIA does not preempt § 17533.7. *Id*. Further, § 17533.7 is part of California's False Advertising Law ("FAL") and accurate, non-misleading labels, such as qualified "Made in the U.S.A.," surely promote the objectives of FAL.  "If the purpose of the false advertising law is to protect consumers from fraud and deceit, it is difficult to see how that purpose is not served, or is affirmatively violated, by a label that accurately describes where a product and all its component parts are sourced and manufactured." *Id*. at *10. Manufacturers that choose to employ one qualified label on products sold throughout the country would not be able to avail themselves of the lower standard required by the FTC regulation

1  as the labels would have to comply with the stricter California standard. However,

2  manufacturers could always use different labels for products sold in California. While

3  complying with § 17533.7 may not be *convenient* for manufacturers and retailers who

4  wish to use a simple, unqualified "Made in the U.S.A." label, such compliance is not

5  impossible. Accordingly, because § 17533.7 permits the use of qualified labels, it is not

6  preempted by TFPIA.

7  **II.   Dormant Commerce Clause**

8        Defendants also argue that California's Business and Professions Code §

9  17533.7 violates the dormant commerce clause. (MTD 20, ECF No. 23-1.) Defendants

10  contend that the California law has no public benefit and imposes significant burdens

11  on interstate commerce. (*See id*. at 22-23.) Defendants posit that because a significant

12  portion of consumers around the country are willing to accept that products labeled

13  "Made in the U.S.A." may contain component parts made in foreign countries, §

14  17533.7 serves no purpose.[6] (*Id*. at 22.) Further, Defendants argue that § 17533.7 may

15  actually be harmful to the public because it may lead manufacturers to move their

16  manufacturing overseas if they can only use the "Made in the U.S.A." label if 100

17  percent of their work is done in this country. (*Id*. at 22–23.) Next, Defendants explain

18  that § 17533.7 significantly burdens interstate commerce because labels that are

19  sufficient for the rest of the country are insufficient in California. (*Id*. at 23.) This

20  reality leaves manufacturers and retailers with three choices, all of which impose a

21  burden: (1) "refrain from selling their products in California," (2) "label all their

22  products for sale to California, thus losing the benefits of the 'Made in the U.S.A.'

23  label," or (3) "keep a separate supply of products on hand for sales to California." (*Id*.

24  at 24.) Defendants conclude that California's legitimate state interests in § 17533.7,

25  which Defendants conclude are none, are significantly outweighed by the burdens the

26  law places on interstate commerce, such that the law violates the dormant commerce

27  _____

28        [6]Defendants ask "what additional benefit is obtained by requiring that *all* component parts be American made?" and conclude that any benefit would be slight, at best. (Reply 8, ECF No. 34.)

1   clause. (*Id*.)

2       Plaintiffs challenge Defendants' contention that there are only three ways for
3   manufacturers and retailers to comply with California and state law and, instead, argue
4   that there is a fourth option available–labels that correctly identify where a product is
5   made and where any of its component parts are made. (Resp. in Opp'n 28, ECF No.
6   31.) Plaintiffs also assert that California has a legitimate state interest in protecting its
7   citizens from untruthful advertising, such as deceptive unqualified "Made in the
8   U.S.A." labels. (*Id*. at 29.) Plaintiffs further argue that the burden § 17533.7 places on
9   interstate commerce is minimal because it merely requires manufacturers to use
10  qualified "Made in the U.S.A." labels that correctly identify the origin of products'
11  various component parts. (*Id*. at 29–30.)

12      First, the Court finds that there is a legitimate state interest in combating
13  deceptive advertising. Defendants suggestion that § 17533.7 serves no purpose is
14  unconvincing because it is clear that the California legislature wanted to ensure that
15  only those products made, and whose component parts were made, in the United States
16  can bear the unqualified "Made in the U.S.A." label to protect consumers. Similarly,
17  Defendants suggestion that there is also no purpose in requiring that 100 percent of a
18  product be made in the United States to bear the "Made in the U.S.A." label is
19  unpersuasive. Regardless of whether Defendants believe a distinction between all and
20  virtually all is warranted, the California legislature decided that there is an important
21  difference between items completely or substantially made in this country.
22  Accordingly, there is a legitimate state interest on Plaintiffs' side of the scale.

23      The issue of whether § 17533.7 imposes an undue burden on interstate commerce
24  also rests on whether § 17533.7 permits the use of qualified "Made in the U.S.A."
25  labels.  The Court, as explained above, concludes that § 17533.7 permits the use of
26  qualified labels and, therefore, California law does not impose an undue burden on
27  interstate commerce. Manufacturers and retailers can comply with California and
28  federal law by using a qualified label on their products. It would not be impossible, or

even difficult, to comply with the two laws at the same time. Manufacturers who choose, on their own, not to use one qualified label throughout the country must use a different label for products sold in California. § 17533.7 permits the use of qualified labels and, accordingly, § 17533.7 does not violate the dormant commerce clause.

### CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiffs' and Defendants' requests for Judicial Notice, and the Court **DENIES** Defendants' Motion to Dismiss.

**IT IS SO ORDERED**.

DATED:  April 8, 2015

Honorable Janis L. Sammartino
United States District Judge

14cv1404