1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONI HASS, individually, and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>v.<br><br>CITIZENS OF HUMANITY, LLC, a Delaware Limited Liability Company; and DOES 1 through 100, inclusive,<br><br>                Defendant. | Case No.: 14-CV-1404 JLS (WVG)<br><br>**ORDER GRANTING DEFENDANT CITIZENS OF HUMANITY, LLC'S MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(1) AND 12(B)(6)**<br><br>(ECF No. 94) |

      Presently before the Court is a Motion to Dismiss filed by Defendant Citizens of Humanity, LLC ("COH"). ("MTD," ECF No. 94.) Also before the Court is Plaintiff's Response in Opposition to ("Opp'n," ECF No. 101) and Defendant's Reply in Support of ("Reply," ECF No. 102) Defendant's MTD. Having considered the parties' arguments and the law, the Court **GRANTS** Defendant's MTD.

## BACKGROUND

      In November 2013, Plaintiff Coni Hass purchased Ingrid brand jeans manufactured and sold by Defendant COH from a Nordstrom store in San Diego. (SAC ¶ 18.) The jeans purchased by Plaintiff were "marked with a 'Made in the U.S.A.' country of origin designation." (*Id.*) Plaintiff alleges that she relied on Defendant's representations that the

jeans were made in the United States, (*id.* ¶¶ 18, 19), but that various component parts, including the "fabric, thread, buttons, rivets, and/or certain subcomponents of the zipper assembly," were actually manufactured outside of the United States, (*id.* ¶ 14).  Plaintiff further alleges that because the jeans were not made entirely of products manufactured in the United States, they "are of inferior quality" and "less reliable" than jeans actually made entirely in the United States.  (*Id.* ¶ 22.)  Plaintiff alleges that she overpaid for the items purchased and seeks damages accordingly.  (*Id.*)

On May 5, 2016, Plaintiff filed her SAC, which is the operative complaint.  (ECF No. 90.)  Plaintiff brings this action as a class action.  Plaintiff asserts three claims against Defendants: (1) violation of the California Consumers Legal Remedies Act ("CLRA"); (2) violation of California Business and Professions Code § 17200 *et seq*. (California Unfair Competition Law or "UCL"); and (3) violation of the California Business and Professions Code § 17533.7.

On May 19, 2016, Defendant COH filed the instant MTD.  (ECF No. 94.)  Defendant asks the Court to dismiss Plaintiff's SAC on several grounds.  First, Defendant argues Plaintiff fails to plead a violation of the new version of California Business and Professions Code § 17533.7.  (*Id.* at 9.[1])  Additionally, and as a corollary, Defendant argues that Plaintiff's other claims fail because she fails to plead a violation of the new § 17533.7.  (*Id.* at 17–20.)  Finally, Defendant claims that Plaintiff lacks standing to sue for products she did not purchase.  (*Id.* at 13–17.)  The Court addresses each argument in turn.

## MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

## I.   Legal Standard

### A. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted,"

---

[1] Pin citations to docketed materials refer to the CM/ECF page numbers electronically stamped at the top of each page.

generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (alteration in original). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "[F]acts that are 'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.* at 678–79 (citing *Twombly*, 550 U.S. at 555). This review requires "context-specific" analysis involving the Court's "judicial experience and common sense." *Id.* at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged— but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). The Court will grant leave to amend unless it determines that no modified contention "consistent with the challenged pleading . . . [will] cure the deficiency." *DeSoto*

*v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schriber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

### B. Rule 9(b)

Additionally, claims that allege fraud must meet the heightened pleading standard of Rule 9(b), which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Allegations of fraud must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985); *see also Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (noting that particularity requires plaintiff to allege the "who, what, when, where, and how" of the alleged fraudulent conduct). Additionally, where a plaintiff alleges "a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim[,] . . . the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003) (citations omitted).

## II.  Analysis

### A. The New California Business and Professions Code § 17533.7

Defendant argues that Plaintiff's California Business and Professions Code § 17533.7 claim must meet the requirements of the new version that went into effect on January 1, 2016. (MTD 9.) That Section makes it

> unlawful for any person, firm, corporation, or association to sell or offer for sale in this state any merchandise on which merchandise or on its container there appears the words "Made in U.S.A.," "Made in America," "U.S.A.," or similar words if the merchandise or any article, unit, or part thereof, has been entirely or substantially made, manufactured, or produced outside of the United States.

Cal. Bus. & Prof. Code § 17533.7(a).  Both parties agree that the amended version of the statute is more lenient.  (MTD 9–10; Opp'n 2–3.)  In particular, the statute now exempts from liability products bearing the label as long as any foreign parts "constitute not more than 5 percent of the final wholesale value of the manufactured product." Cal. Bus. & Prof. Code § 17533.7(b).  Moreover, this Section does not apply to products incorporating foreign-sourced materials that cannot be found domestically, so long as those materials do not constitute more than 10 percent of the final wholesale value of the manufactured product.  *Id.* at § 17533.7(c).  Defendant argues that this new version of the statute should apply to this action despite the fact that this action started in 2014 and Plaintiff made her purchase in 2013.  (MTD 9; *see also* SAC ¶ 18.)

"Absent an express declaration of retrospectivity or other clear indication that the Legislature intended retrospective application, a new statute is presumed to operate prospectively." *Brenton v. Metabolife Int'l, Inc.*, 116 Cal. App. 4th 679, 688 (2004) (citing *Tapia v. Super. Ct.*, 53 Cal. 3d 282, 287 (1991)).  At the same time, California recognizes "the well settled rule that an action wholly dependent on statute abates if the statute is repealed without a saving clause before the judgment is final." *Younger v. Super. Ct.*, 21 Cal. 3d 102, 109 (1978) (citations omitted).  "'The justification for this rule is that all statutory remedies are pursued with full realization that the legislature may abolish the right to recover at any time.'" *Zipperer v. Cty. of Santa Clara*, 133 Cal. App. 4th 1013, 1023 (2005) (quoting *Governing Bd. v. Mann*, 18 Cal. 3d 819, 829 (1977)).  Indeed, "[w]here the Legislature has conferred a remedy and withdraws it by amendment or repeal of the remedial statute, the new statutory scheme may be applied to pending actions without triggering retrospectivity concerns." *Brenton*, 116 Cal. App. 4th at 690.  "Repeal of a remedial statute destroys a pending statutory action unless 'vested or contractual rights have arisen under' the statute." *Zipperer*, 133 Cal. App. 4th at 1024 (citing *Dep't of Soc. Welfare v. Wingo*, 77 Cal. App. 2d 316, 320 (1946), and Cal. Gov. Code § 9606).  "'No person has a vested right in an unenforced statutory penalty or forfeiture.' . . .  Until it is fully enforced, a statutory remedy is merely an 'inchoate, incomplete, and unperfected'

right, which is subject to legislative abolition." *Id.* (citations omitted).

At least two district courts in the Ninth Circuit have recently considered the same issue and held that the amended § 17533.7 applies to causes of action that occurred before the effective date of the new provisions. *See Fitzpatrick v. Tyson Foods, Inc.*, No. 216CV00058JAMEFB, 2016 WL 5395955, at *2–4 (E.D. Cal. Sept. 27, 2016); *Rossetti v. Stearn's Prod., Inc.*, No. CV 16-1875-GW(SSX), 2016 WL 3277295, at *3–5 (C.D. Cal. June 6, 2016). This Court finds the reasoning of its sister courts persuasive and joins them in finding that because Plaintiff's claim derives entirely from a statute, her claim is governed by the provisions of the amended § 17533.7. *See Rossetti*, 2016 WL 3277295, at *4 ("Here, there is no question that Plaintiff's 'Made in U.S.A.' case is 'wholly dependent on statute' and that the 2015 changes to section 17533.7 did not include a 'saving clause.' As a result, it appears to the Court that Plaintiff's action based on the prior version of section 17533.7 has abated and must be dismissed."); *see also Fitzpatrick*, 2016 WL 5395955, at *4 ("The California Legislature decided that something once unlawful is now permissible and has eliminated a cause of action. This drastic change invokes the repeal rule.").

Plaintiff's arguments to the contrary are unavailing. First, Plaintiff argues that the amended statute cannot be applied retroactively because it would impair Plaintiff's vested rights. However, Plaintiff's rights have not yet vested because Plaintiff's claim arises purely by statute, there is no saving clause in the amended statute, and there has been no final judgment in the case.[2] *See Zipperer*, 133 Cal. App. 4th at 1024 ("Until it is fully

---

[2] Even if Plaintiff had a vested right, which she does not, it is settled law in California that "the state, exercising its police power, may impair such rights when considered reasonably necessary to protect the health, safety, morals and general welfare of the people." *Plotkin v. Sajahtera, Inc.*, 106 Cal. App. 4th 953, 963 (2003) (citing *In re Marriage of Buol*, 39 Cal. 3d 751, 760–61 (1985)) (quotations omitted). While Plaintiff correctly acknowledges that such an impairment may at times constitute a violation of due process, Plaintiff fails to demonstrate that application of the amended statute in this case violates due process by impairing her purported vested rights. To be sure, Plaintiff identifies factors courts weigh to determine whether retroactive application of a statute violates due process by impairing a vested right. (Opp'n 5–6.) However, Plaintiff fails to argue these factors in any meaningful way. (*Id.*)

1   enforced, a statutory remedy is merely an 'inchoate, incomplete, and unperfected' right,

2   which is subject to legislative abolition.") (citations omitted); *see also S. Coast Reg'l Com.*

3   *v. Gordon*, 84 Cal. App. 3d 612, 618–19 (1978) ("Without a saving clause or statutory

4   continuity, a party's rights and remedies under a statute may be enforced after repeal only

5   where such rights have vested prior to repeal . . . , [and] a statutory remedy does not vest

6   until final judgment[.]") (citations omitted).

7          Second, Plaintiff argues that application of the amended statute would constitute a

8   substantial impairment of her contract rights.  (Opp'n 4.)  However, Plaintiff fails to cite

9   to any case finding that retroactive application of a statute substantially impairs a contract

10   right.  Nor does Plaintiff explain how her purchase of the jeans constitutes a contract right

11   subject to impairment.  And even if this purchase constitutes a contract right, Plaintiff fails

12   to demonstrate how application of the amended statute "substantially" impairs that right.

13   Plaintiff simply claims that she relied on the "Made in the USA" label in order to "support[]

14   U.S. jobs and the U.S. economy."  (Opp'n 4.)  Yet as Defendant notes, Plaintiff never

15   explains how the statutory amendment—once requiring 100% American-made parts, and

16   now only requiring 95% of the wholesale value—"substantially" impairs her contract

17   rights.  Specifically, Defendant argues that applying the amended statute to this case "still

18   leaves [Plaintiff] supporting the American economy by buying a product with American-

19   made parts comprising 95% of the wholesale value."  (Reply 7.)  Accordingly, the Court

20   finds that the amended statute does not substantially impair Plaintiff's contract rights—if

21   any.  Thus, the Court holds that Plaintiff's claim is governed by the provisions of the newly

22   amended § 17533.7.

23          With this in mind, the Court finds that, as currently pled, Plaintiff's allegations fail

24   to raise a plausible inference that Defendant has violated amended § 17533.7, much less

25   meet the particularity requirements of Rule 9(b) for claims sounding in fraud.  Specifically,

26   Plaintiff's various allegations that Defendant's products incorporate foreign materials are

27   simply conclusory.  For instance, Plaintiff alleges that Defendant's products "are

28   substantially  made,  manufactured,  or  produced  from  <u>component  parts</u>  that  are

7

manufactured *outside of the United States*."  (SAC ¶ 3 (emphases in original).)  However, Plaintiff fails to allege any facts that would support this and other similarly conclusory assertions.  (*See id.* ¶¶ 14, 18, 21, 22, 47, 48, 61.)  Plaintiff does allege that "on information and belief" Defendant's products incorporate foreign materials—such as the "fabric, thread, buttons, subcomponents of the zipper assembly, and/or rivets." (SAC ¶ 4; *see also id.* ¶ 14.)  But pleading "on information and belief" that Defendant's products may incorporate these materials is insufficient to raise a plausible inference that these materials constitute more than five or ten percent of the total wholesale value of the product as required by the amended § 17533.7.  *See Fitzpatrick*, 2016 WL 5395955, at *4 ("Because her complaint does not include any allegations regarding the percentage of foreign sourced materials contained in Defendant's products, . . . Plaintiff has failed to adequately allege a violation of the current version of § 17533.7.").  Without more, Defendant plainly cannot verify Plaintiff's allegations as they apply to its sale of the Ingrid jeans, much less any other product.  Thus, Plaintiff has failed to adequately allege that Defendant violated the amended and controlling version of § 17533.7.  Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's § 17533.7 claim.

## B. Plaintiff's Remaining Claims

In addition to violating § 17533.7, Plaintiff claims that Defendant's conduct violates the CLRA (SAC ¶¶ 35–44), and the UCL (*id.* ¶¶ 45–58).  Defendant argues that Plaintiff's claims fail because they are based on conduct governed by § 17533.7, and Plaintiff has failed to properly allege that Defendant has violated that statute.  (MTD 17–20.)

At the outset the Court finds that under California's safe harbor doctrine, Plaintiff's claim that Defendant violated § 17533.7 forecloses both of Plaintiff's additional claims based on that alleged conduct.  *See Fitzpatrick*, 2016 WL 5395995, at *5 (finding same).  The California Supreme Court addressed the safe harbor doctrine in relation to UCL actions, holding that

> [a]lthough the unfair competition law's scope is sweeping, it is
> not unlimited. Courts may not simply impose their own notions

of the day as to what is fair or unfair. Specific legislation may limit the judiciary's power to declare conduct unfair. If the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination. When specific legislation provides a "safe harbor," plaintiffs may not use the general unfair competition law to assault that harbor.

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 182 (1999). Courts have applied the safe harbor rule to CLRA claims as well. *See Fitzpatrick*, 2016 WL 5395955, at *5 (collecting authority). Additionally, the Court is not convinced by Plaintiff's argument that her CLRA and UCL claims are based on conduct independent of Defendant's violation of § 17533.7. As to her UCL claim, Plaintiff alleges that Defendant generally engaged in "unfair" business practices, (Opp'n 6 (citing SAC ¶¶ 45–58)), but does not describe those practices in any sense apart from Defendant's alleged mislabeling of its products. Plaintiff likewise argues that her CLRA claim is based on independent conduct, yet inconsistently states that her allegations describe "how Defendant violated the CLRA by selling products *with misleading "Made in the USA" labels*." (Opp'n 6 (citing SAC ¶ 41) (emphasis added).). Thus, as currently pled, Plaintiff's additional claims fail to state a plausible claim for relief.

Defendant additionally argues that Plaintiff failed to comply with several requirements imposed by the CLRA. (MTD 20.) First, Defendant argues that Plaintiff is barred from collecting damages under the CLRA because she failed to give Defendant pre-suit notice of its alleged CLRA violation. (*Id.*; *see also* Cal. Civ. Code § 1782(a).) Plaintiff concedes as much, (Opp'n 7–8), and thus the Court finds that Plaintiff's claim seeking damages under the CLRA for Defendant's alleged conduct is barred unless properly amended. *See Oxina v. Lands' End, Inc.*, No. 14-CV-2577-MMA NLS, 2015 WL 4272058, at *4 (S.D. Cal. June 19, 2015) (dismissing plaintiff's CLRA claim and granting leave to amend to comply with CLRA's notice and affidavit requirements). Second, Defendant argues that plaintiff is barred from seeking injunctive or declaratory relief under

the CLRA because she failed to file the appropriate affidavit required by the CLRA. (MTD 20 (citing Cal. Civ. Code § 1780(d)).) The Court agrees at this juncture, but Plaintiff will have an opportunity to cure this deficiency in her amended complaint.[3] Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's CLRA and UCL claims.

**MOTION TO DISMISS PURSUANT TO RULE 12(b)(1)**

## I.     Legal Standard

### A. Rule 12(b)(1)

Federal courts are courts of limited jurisdiction, and as such have an obligation to dismiss claims for which they lack subject-matter jurisdiction. *Demarest v. United States*, 718 F.2d 964, 965 (9th Cir. 1983). Because the issue of standing pertains to the subject-matter jurisdiction of a federal court, motions raising lack of standing are properly brought under Federal Rule of Civil Procedure 12(b)(1). *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). The plaintiff bears the burden of establishing he has standing to bring the claims asserted. *Takhar v. Kessler*, 76 F.3d 995, 1000 (9th Cir. 1996); *see also In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 984 (9th Cir. 2008) ("The party asserting jurisdiction bears the burden of establishing subject matter jurisdiction on a motion to dismiss for lack of subject matter jurisdiction.").

Rule 12(b)(1) motions may challenge jurisdiction facially or factually. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* Here, Defendant's challenge is facial because it disputes whether Plaintiff's alleged harm is sufficiently particularized to confer Article III standing for the products she did not

---

[3] Plaintiff claims she has already cured this deficiency by filing her affidavit in advance of the hearing on the present MTD. (Opp'n 8 (citing ECF No. 99).) However, Plaintiff filed her affidavit *after*—not "concurrently with"—her filing of the SAC as required by § 1780(d). Thus, Plaintiff is not currently in compliance with the statute, but will have an opportunity to become compliant in her amended complaint.

10

purchase.  Defendant does not rely upon extrinsic evidence, but instead relies only on the pleadings.  Accordingly, the Court will assume the truth of Plaintiff's factual allegations, and draw all reasonable inferences in favor of Plaintiff.  *Whisnant v. United States*, 400 F.3d 1177, 1179 (9th Cir. 2005).

### B. Article III Standing

Under Article III of the United States Constitution, a federal court may only adjudicate an action if it constitutes a justiciable "case" or a "controversy" that has real consequences for the parties.  *Raines v. Byrd*, 521 U.S. 811, 818 (1997); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  A threshold requirement for justiciability in federal court is that the plaintiff have standing to assert the claims brought.  *Id.*; *see also DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006) ("Article III standing . . . enforces the Constitution's case-or-controversy requirement") (citations omitted).  As the sole[4] proposed class representative, Plaintiff has the burden of showing that Article III standing exists in this case.  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 978 (9th Cir. 2011).

The essence of the standing inquiry is to determine whether the party seeking to invoke the Court's jurisdiction has "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends."  *Baker v. Carr*, 369 U.S. 186, 204 (1962). Three elements form the core of the standing requirement:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . traceable to the challenged action of the defendant, and not . . . the result of the independent action of some third party not before the court.  Third, it must be likely, as opposed to

---

[4] In a class action, only one named plaintiff must meet the requirements of Article III standing.  *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007).

merely speculative, that the injury will be redressed by a favorable decision.

*Lujan*, 504 U.S. at 560–61 (quotations, citations, and footnote omitted). This irreducible constitutional minimum, often termed "Article III standing," seeks to limit the reach of the judiciary into matters properly reserved for other branches of government. *See DaimlerChrysler*, 547 U.S. at 341; *see also Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 474 (1982). Although the Supreme Court has noted that "the concept of 'Art. III standing' has not been defined with complete consistency," *Valley Forge*, 454 U.S. at 475, these three "bedrock" requirements of injury, causation, and redressability are uniformly essential to federal court jurisdiction. *Raines v. Byrd*, 521 U.S. at 818–20; *see also Bennett v. Spear*, 520 U.S. 154, 164–66 (1997).

**II.   Analysis**

With these principles in mind, the Court assesses whether Plaintiff has standing to sue on behalf of herself and the putative class for products she did not purchase.

Defendant argues that Plaintiff fails to plead standing for products she did not purchase. (MTD 13–17.) In particular, Defendant argues that Plaintiff fails to demonstrate that the items she did not purchase are "substantially similar" to the Ingrid-style jeans that she purchased. (*Id.*) The Court agrees.

"In California, [t]he majority of the courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." *Oxina*, 2015 WL 4272058, at *6 (citations and quotations omitted). "[T]he critical inquiry seems to be whether there is sufficient similarity between the products purchased and not purchased." *Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. C-11-2910 EMC, 2012 WL 2990766, at *11 (N.D. Cal. July 20, 2012); *see also Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000, 1006 (N.D. Cal. 2012) ("If there is a sufficient similarity between the products, any concerns regarding material differences in the products can be addressed at the class certification stage.").

Plaintiff seeks to represent a class of California purchasers who have purchased any of Defendant's apparel products bearing the allegedly misleading "Made in the U.S.A." labels, not just the specific brand of jeans Plaintiff purchased. (*See, e.g.*, SAC ¶ 3 n.2.) However, Plaintiff's SAC fails to describe or even identify any other type of apparel product made and sold by Defendant, let alone demonstrate that those products and their labels are substantially similar to the Ingrid brand jeans Plaintiff purchased. Thus, the Court finds that, as currently pled, Plaintiff lacks standing to proceed either for herself or on behalf of others as to products she did not purchase. *See Oxina*, 2015 WL 4272058, at *6 ("Plaintiff only refers to these other products as 'apparel' even though the term 'apparel' could conceivably encompass hundreds, or even thousands of different types of products, including those presumably made of different materials, and bearing different physical labels than the Necktie purchased by Plaintiff. . . . Without any factual detail as to which 'apparel' products Plaintiff refers, the Court cannot make a finding that the unpurchased products bear any similarity to Plaintiff's Necktie."). Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's claims on behalf of other purchasers for products she did not purchase.

## CONCLUSION

In light of the foregoing, Defendant's motion to dismiss Plaintiff's SAC is **GRANTED**. Plaintiff's claims are **DISMISSED WITH LEAVE TO AMEND**. Plaintiff **SHALL FILE** her third amended complaint on or before January 27, 2017.

**IT IS SO ORDERED.**

Dated: December 6, 2016

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge